ALFRED G. ANDERSON, APPELLEE, V. JOSEPH J. IMHOFF, APPELLANT.

[FILED MARCH 30, 1892.]

1. **Building Contract:** PLEADING: MOTION TO MAKE MORE DEFINITE. In an action on a building contract, for extra material furnished and work performed by the contractor, the answer was, that there was a stipulation in the contract that the same was to be estimated by the architect and such estimate had been made and the amount thereof tendered. The reply was, in substance, that the architect by collusion and fraud had refused to make proper estimates, etc. *Held,* That a motion to make the reply definite and certain, was properly overruled.

2. **Pleading:** REPLY: DEMURRER. Matter in the reply in explanation or avoidance of the facts stated in the answer does not constitute a new cause of action and is not on that ground subject to demurrer.

3. **Witnesses:** REFRESHING MEMORY. A witness testified that the figures used by him to refresh his memory, were made at the time of the measurement and were correct, but that he had lost the original; that the copy was correct. *Held,* That he could refresh his memory from the copy.

4. **Building Contract:** ARBITRATION: FRAUD. A provision in a building contract, that the value of changes made in the building is to be estimated by the architect and shall be final, is conclusive on the parties if the agreement is carried out in good faith. A contract of this kind is based on the presumption that the architect will use his professional knowledge in an honest endeavor to make a fair adjustment of such changes. Therefore, where he is charged in the pleadings with fraud, partiality, or

other improper cause, whereby one of the parties has been defrauded, and there is testimony in support of such charges, the question is one for the jury to determine.

5. Evidence examined, and *held*, to sustain the judgment.

APPEAL from the district court for Lancaster county. Heard below before FIELD, J.

*Atkinson & Doty*, for appellant:

New matter must be specifically pleaded in the reply as in the answer. (*Kimberling v. Hall,* 10 Ind., 407; *Hatch v. Coddington,* 32 Minn., 92; Bliss, Code Pleading, sec. 211; *Ockenden v. Barnes,* 43 Ia., 619.) It is not the province of a reply to introduce new causes of action. (*Hastings Sch. Dist. v. Caldwell,* 16 Neb., 70; Maxwell, Pl. & Pr., 155; *Durbin v. Fisk,* 16 O. St., 534; 1 Nash, Pl. & Pr., 265; *Hudson v. McCartney,* 33 Wis., 346.) The fact that memoranda are not made contemporaneously with the event, is fatal to their admissibility, unless made when the memory is fresh. (*Welcome v. Batchelder,* 23 Me., 85; *Glover v. Hunnewell,* 6 Pick. [Mass.], 222; *Downs v. R. Co.,* 47 N. Y., 83; *Washington Co. v. Webster,* 68 Me., 449; *Flood v. Mitchell,* 68 N. Y., 507; *Moore v. Meacham,* 10 Id., 207.) There was no attempt in this case to show that the certificate was not given in good faith, and its form is not material. (*Hudson v. McCartney,* 33 Wis., 331; *Baasen v. Baehr,* 7 Wis., 440; *D. & H. Canal Co. v. Pa. Coal Co.,* 50 N. Y., 250; *Wyckoff v. Meyers,* 44 Id., 145; *Glacius v. Black,* 50 Id., 151; *Tetz v. Butterfield,* 54 Wis., 242; 1 Wharton, Ev., 523; *Marclay v. Schults,* 29 N. Y., 346.)

*Lamb, Ricketts & Wilson, contra.*

MAXWELL, CH. J.

This is an action for extra work performed on a building, for which the plaintiff claims he is entitled to recover the

sum of $715.38.   On the trial of the cause judgment was rendered in his favor for the sum of $434.28.   The first errors assigned relate to the pleadings, hence it is necessary to set them out.   The petition is as follows:

" Comes now the plaintiff and for his cause of action alleges and says:

" First—That on or about — day of ——, 1889, he entered into a contract in writing with said Joseph J. Imhoff, whereby the said plaintiff was to furnish all the material and perform all the labor necessary for the erection and completion of the brick work for the building situate on lots 1, 2, 3, in block 67, in the city of Lincoln, Nebraska, known as the Exposition building, for the sum of $4,135, according to the plans and specifications referred to and constituting a part of said contract, all of which plaintiff duly completed as required by said contract. ·

" Second—That the reason the contract is not hereto attached is because the same is in the possession of the defendant Imhoff, which he refuses to deliver up or to allow the plaintiff to have or make a copy of the same.

" Third—The plaintiff, at the request of the defendant Imhoff, performed a large amount of labor and furnished a large amount of material and used the same in said building in addition to the original amount required by the contract orginally entered into, which said defendant Imhoff agreed to pay for, rendered necessary by certain changes in and additions to the requirements of the original contract, amounting in all to the sum of $2,011.13, of which a full statement of the items of the extras, labor, and material is set forth in a mechanic's lien, which was duly filed in the office of register of deeds for Lancaster county, Nebraska, on or about January 4th 1890, and within four months from the date of furnishing the last material and the performance of the last labor, a true copy of which lien is hereto attached and marked Exhibit ' A.'

" Fourth—That no action at law has been commenced

for the recovery of the said sum nor any part thereof, and no part of said sum has been paid except the sum of $5,430.75, and there remains due now to the plaintiff from the said defendant Joseph J. Imhoff, upon said orginal contract and the extras herein described, the sum of $715.38 after allowing all just credits.

"Fifth—Further, that the defendant Joseph J. Imhoff is the owner of the land upon which the said building is erected.

"Sixth—That the defendant, the Northwestern Mutual Life Insurance Company, holds a mortgage for $35,000 against the said building, filed in the office of the register of deeds for Lancaster county, Nebraska, on September 18, 1889, book 57, page 186, mortgage record.

"Wherefore plaintiff prays that an accounting may be had between the plaintiff and said defendant Joseph J. Imhoff, and that the said plaintiff be allowed to recover in this action the sum of $715.38, or such other sum as may be found to be justly due him, and the said sum may be declared a lien on the said land and building thereon, and that a decree be entered therefor, and an order of sale duly issued directing the sale of said land and building for the payment of any judgment or decree that may be found in favor of the said plaintiff, and for such further and other relief, or both, as may be found just and equitable, together with interest and costs of this suit."

To this petition the defendant filed the following answer:

"Now comes the said defendants, and for answer to the petition of said plaintiff says:

"First—The defendants admit that on or about the 18th day of July, 1889, the said plaintiff entered into a written contract with said defendant Imhoff, a copy of which is hereto annexed and made a part hereof, by which said plaintiff was to do and perform all the work, labor, and material necessary to construct a certain building at the

corner of N and Twelfth streets, according to the plans and specifications made a part of the said contract.

"Second—The said Imhoff, as further answer to said petition, says that he has done and performed all that by the terms of said contract he has agreed to do and perform, and has been and is willing to abide by the decision of the architect as to extra work or changes made in plans per terms of contract.

"Third—The said Imhoff further says in answer to said petition, that the amount' found due the said plaintiff for extra work upon said building caused by change of plans, as per architect's certificate, is $1,438, and that the said defendant has paid upon said amount the sum of $1,295, leaving a balance unpaid of $143.25, which sum he has duly tendered the said plaintiff, and which said plaintiff has refused to accept as he had agreed to do in his said contract.

"Fourth—The said defendants deny each and every allegation in said petition, except where expressly admitted in this answer.

"Wherefore the defendants pray that they may go hence and recover judgment against said plaintiff for the costs of suit."

A reply was thereupon filed. The defendant then filed a motion as follows: "And now comes the defendant by his attorneys, and moves the court to compel the plaintiff to make his charge of fraud against the certificate of the architect more specific and definite, by stating facts and circumstances, and upon what particular work the said architect acted fraudulently, and wherein the said acts of the architect and the certificates of the architect were fraudulent." The motion was overruled, and the overruling of the same is the first error complained of. The court did not err in overruling the motion. The reply does set up the ground of fraud, viz.: "Said architect fraudulently and collusively made, and that in said pre-

tended decision of said architect no allowance whatever was made for large portions of said extra work and material, and plaintiff says that said pretended decision was made in the absence of this plaintiff and without any notice to him of the time and place when the same would be made, and that said architect refused to figure up the amount of said extra work and material in the presence of this plaintiff, or explain to this plaintiff the basis of his said pretended decision, but fraudulently and collusively refused to make the proper allowance for the material actually furnished and the work actually done by this plaintiff." The defendant thereupon demurred to the reply because it set up a new cause of action. The demurrer was overruled and this is now assigned for error. The court did not err in overruling the demurrer. The reply did not set up a new cause of action, but merely matter which, if true, would avoid the provision in the contract in regard to the adjustment and certificate of the architect. This was proper to set forth in the reply. In other words, matter in explanation or avoidance of the facts stated in the answer may be pleaded in the reply.

The third error assigned is that the witness Anderson was permitted to refresh his memory from a memorandum not made at the time of the measurements. The testimony of the witness upon this point is as follows:

Q. Was anything else included in your contract for putting in piers instead of stone walls; anything else included at the time of the change?

A. No.

Q. Did you agree upon the price of these two changes?

A. Yes, sir.

Q. What was the agreed price between you and Mr. Imhoff for these two items?

A. Nine hundred dollars.

Q. State what extra work was rendered necessary and done by you on the west side besides putting in that nine-inch wall?

A. It was that wedge, as you call it, in there. That Odell wall was cracked like that (indicating); had a curve like this.

Q. Was that included in the agreed price for the nine-inch wall?

A. No, we did not know about that till we came to find out.

Q. Who ordered the filling in between the west wall and the wall of the Odell building?

A. Mr. Placey and Mr. Imhoff.

Q. What was said about the price?

A. The price was not stated, only to go ahead, and we will pay you whatever it is worth.

Q. What is the average thickness of the fill behind that wall which you put in?

A. I estimated it as closely as I could, and as reasonably as I could do it. It would take up four and a half brick to the foot; that is, a little over two inches.

Q. Two brick and a half of the square surface of the whole building?

A. No; a foot in height.

Q. That is, a square foot against the whole building?

A. Yes, sir.

Q. What additional amount of material was used in that filling up.

A. I don't remember exactly; I have got it figured off.

Q. Have you the memorandum you figured upon it?

A. I used to have one, but I lost it yesterday.

Q. This is a copy here?

A. Yes, sir; well, I have got a copy.

Q. What material did you use in filling between those two walls?

A. Brick and mortar.

Q. What was the fair and reasonable value of the material used, and of the labor in the filling?

A. I valued it in proportion, and that is customary.

Q. What was the fair and reasonable value of the work and material in making that fill?

A. I charged $10 a thousand over the wall.

Q. How many thousand did it amount to?

A. Nineteen thousand, if I am not mistaken.

Q. By WOODWARD. The Odell wall?

A. Nineteen thousand four hundred and forty was, I think, the figure.

Q. Would that amount give a gross sum of $194.40?

DOTY: I object to his refreshing his memory, unless the figures were made at the time.

WITNESS: I made these figures at that time.

DOTY: These here?

A. A copy of these.

DOTY: I object to his refreshing his memory from that (paper) unless it was made at the time.

WITNESS: I made that at the time.

DOTY: Did you make that paper?

WITNESS: I did not make that, but the figures I made I dropped in the water closet with others, but I have got copies.

Overruled and exception.

Q. What was the fair, reasonable value of the whole material and labor of making the fill between these two wall?

A. That is $198.90.

Q. You value that $10 a thousand for the brick?

A. Yes, sir.

Q. Is that the fair and reasonable value of the brick in the wall?

A. Yes, very reasonable; we agreed for this wall to be on the same basis.

Q. On the south side—what change was made in the plans for the wall on the south side next the alley?

A. In this lower story, here, that smoke stack is put on the outside, right in here.

Q. In the alley?

A. Yes, put in here.

The witness testifies, in substance, that the figures were made at the time the measurement was made, and that he had lost the original, and he testifies that the figures are correct. He was not asked if he had willfully destroyed the original, and, so far as appears, the loss was an accident and the copy is admissible.

The contract contains the following provision: "And it is further agreed between the aforesaid parties, that all alterations of the plans for this building, by which the cost of building may be either increased or diminished, shall be adjusted by the architect, whose decision shall be final and conclusive between the parties." In effect, the parties agreed that in case extras were required, that the architect should be the arbitrator to determine the compensation for such changes. Such an agreement, when carried out in good faith, is binding upon the parties. If, however, the arbitrator so chosen should refuse to perform the duties required of him, or should collude with either of the parties and thereby render an unjust award, the adverse party would not be bound by a decision so rendered. It is a fundamental principle in considering awards that fraud, partiality, or willful misconduct of the arbitrator will be a sufficient cause for setting the award aside. (*Rand v. Redington*, 13 N. H., 72; *Torrance v. Amsden*, 3 McLean [U. S.], 509; *Smith v. Cooley*, 5 Daly [N. Y.], 401; *Newland v. Douglass*, 2 Johns. Ch. [N. Y.], 61; *Underhill v. Van Cortlandt*, Id., 339; *Lee v. Patillo*, 4 Leigh [Va.], 436; *Fluharty v. Beatty*, 22 W. Va., 698; *Dickinson v. R. Co.*, 7 Id., 390; *Speer v. Bidwell*, 44 Pa. St., 23; *Paul v. Cunningham*, 9 Id., 106; *Emerson v. Udall*, 13 Vt., 477; *Eaton v. Eaton*, 8 Ired. Eq. [N. Car.], 102; *Hyeronimus v. Allison*, 52 Mo., 102; *Conrad v. Massasoit Ins. Co.*, 4 Allen [Mass.], 20; *Boston Water-power Co. v. Gray*, 6 Met. [Mass.], 131; *Strong v. Strong*, 9 Cush. [Mass.],

560; *Brown v. Bellows*, 4 Pick. [Mass.], 179; *Beam v. Macomber*, 33 Mich., 127; *Sisk v. Garey*, 27 Md., 401; *Cleland v. Hedly*, 5 R. I., 163; *Bash v. Christian*, 77 Ind., 290; *Cothran v. Knox*, 17 S. Car., 207; 1 Am. & Eng. Ency. of Law, 707, and cases cited.)

In the case at bar the plans seem to have been somewhat indefinite, and the same is true of the specifications. The architect himself testified as a witness and did not explain in a satisfactory manner why he made certain deductions from the contract price, or why he cut down the price charged for certain work done by the contractor. His estimates are presumed to be based upon the extra labor performed and material furnished. He was chosen no doubt because of his supposed knowledge of the matter which he was to decide (Rogers on Expert Testimony, 362, 281–2), and that he would use such knowledge honestly and fairly in making his estimates. When in the pleadings his conduct is impugned, and testimony is introduced tending to show that he willfully disregarded his duty, was partial in the performance thereof, or made a mistake, the question becomes one of fact for a jury to determine. Any failure of an architect to consider all matters submitted to him, is to that extent a fraud upon the party discriminated against. This question was pretty fully considered by this court in *Mercer v. Harris*, 4 Neb., 77, and *School District v. Randall*, 5 Id., 408.

There is a large amount of testimony tending to show that the architect did not make a fair allowance for the extra work and material of the contractor and that many of his estimates were not made upon any substantial basis, and that to that extent they were a fraud upon the contractor. This being the case the contractor had a right to prove the value of such extra work and material, and the court to render judgment thereon.

The fifth objection is that the judgment is against the weight of evidence. The judgment is evidently a com-

promise one and is fully sustained by the evidence.    There
is no error in the record and the judgment is

AFFIRMED.

THE other judges concur.